IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| KERMIT POULSON,<br><br>Petitioner,<br><br>vs.<br><br>BOARD OF PARDONS AND PAROLE, et. al.,<br><br>Respondents. | CV 16-13-H-DLC-JTJ<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

On February 16, 2016, Mr. Poulson filed a writ for a petition of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Poulson is a state prisoner proceeding pro se.

I. **Claims**

Mr. Poulson asserts that, by not providing him with a specific catheter, Dr. Kohut and various Montana State Prison officials have: been deliberately indifferent to his medical needs (Claim 1; Doc. 1 at 1-2); acted recklessly in regard to his medical needs (Claim 2; Doc. 1 at 3); engaged in medical neglect (Claim 3; Doc. 1 at 3); been deliberately indifferent to his medical needs in violation of the Americans with Disabilities Act (Claim 4; Doc. 1 at 3-4); and created conditions of confinement that constitute cruel and unusual punishment (Claim 5; Doc. 1 at 4).

1

Poulson also claims that the Parole Board retaliated against him by denying him parole because of his "institutional misconduct" write-ups. (Claim 6; Doc. 1 at 4-5.) Poulson asserts that he was not heard to his satisfaction at his August 27, 2015 parole hearing, and he asks this Court to order the Parole Board to hold another hearing before August 2016 or order that he be granted medical parole. *Id.* at 5.

In a supplement filed March 25, 2015, Poulson reiterated the same concerns about his catheter and also claimed he was retaliated against when prison officials removed him from his treatment programs following a write-up. (Doc. 5 at 1-2.) Poulson requests this Court order him sent to the Billings Pre-Release Center. *Id.* at 2.

To the extent that Poulson attempts to challenge the medical care he received or the conditions of his confinement, he must raise those claims in a 42 U.S.C. § 1983 action. *Blair v. Martel*, 645 F. 3d 1151, 1157-58 (9th Cir. 2011) (Because the prisoner's claim did not challenge the validity of his conviction or "necessarily spell speedier release" it "belongs in a § 1983 complaint, not a habeas petition."). Claims 1-5 should be denied for a lack of jurisdiction; they do not sound in habeas.

A federal court, in conducting habeas review, is limited to deciding whether a state court decision violates the Constitution, laws, or treaties of the United

States. 28 U.S.C. § 2254(a); *Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011) (per curium). It is well established that there is no substantive federal right to release on parole, and "the only federal right at issue" in the context of habeas claims regarding parole hearings is a procedural right. *Swarthout,* 562 U.S. at 222. With respect to parole hearings, an inmate is constitutionally entitled only to an opportunity to be heard and a statement of reasons why parole was denied. *Swarthout*, 562 U.S. at 220. The "beginning and the end of federal habeas" analysis is whether the inmate received the minimal procedural protections required under the Due Process Clause. *Id*.

By Poulson's own admission he received a parole hearing on August 27, 2015. (Doc. 1 at 1.) A review of the records from the State of Montana Board of Pardons and Parole reveals that Poulson was denied parole and instructed that he needed to obtain anger management counseling, chemical dependency counseling, and mental health counseling, and that he needed to complete Cognitive Principles and Restructuring.[1] While Poulson may have been unprepared or not as articulate as he would have liked at his hearing (*see* Doc. 1 at 5), the minimal procedural protections surrounding the procedure were in place: he had the opportunity to be heard and was informed of the reasons why he did not receive parole.

Poulson's argument regarding retaliation by the Parole Board is unavailing.

---

[1] *See*, http://bopp.mt.gov/FinalDispositions/2015FinalDispositions, August 2015.

Retaliation only applies in the context of protected activity. *See, e.g., Barnett v. Centoni*, 31 F. 3d 813, 816 (9th Cir. 1994) (For an inmate to establish a prima facie case of retaliation, a plaintiff must allege that the defendant acted to retaliate against the plaintiff for engaging in a protected activity and the defendant's actions did not serve a legitimate penological purpose). Engaging in activity that would result in an inmate receiving a write-up does not qualify as protected activity; rather it is a one of the many criteria the Parole Board may consider in its determination to grant or deny release. Poulson's claim is without merit.

Likewise, a decision whether or not to remove Poulson from a treatment group due to behavioral issues is within the province of the prison officials. Poulson provides no support for the contention that his removal was retaliation for his repeated grievances. This matter is not actionable in habeas. Even if it were, there is no indication before this Court that Poulson has exhausted his state judicial remedies.

Before a federal court may entertain a state prisoner's petition for writ of habeas corpus, the prisoner must exhaust available state judicial remedies with respect to each claim he raises in federal court. 28 U.S.C. 2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509, 522 (1982); *see also Sarei v. Rio Tinto*, PLC, 550 F. 3d 822, 828-29 (9th Cir. 2008) (en banc) (describing all federal common-law exhaustion doctrines as originating in habeas corpus to prevent "unnecessary conflict between federal

4

[courts] and state courts" or other tribunals)(quoting *Ex parte Royall*, 117 U.S. 241, 251 (1886) (internal brackets omitted)); *Carden v. Montana*, 626 F.2d 82, 84 (9th Cir. 1980) (imposing exhaustion requirement under 28 U.S.C. § 2241). In addition, under the rule of *Younger v. Harris*, 401 U.S. 37 (1971), "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Id*. at 45.

Instead, a person held in custody under the authority of a state must use the procedures the State makes available to challenge his custody. After Poulson has completed that process, including an appeal to the Montana Supreme Court and any collateral proceedings, then he may file in federal court. At that point, this Court would be able to review the merits of Poulson's claim only to determine if the state court's decision was objectively unreasonable. *See* 28 U.S.C. § 2254(d)(1). The claims contained in Poulson's supplement (Doc. 5) should be dismissed for failure to exhaust state judicial remedies.

II.    **Certificate of Appealability**

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. The Court should issue a certificate of appealability as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists

5

of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

A certificate of appealability should be denied because there is no doubt this Court lacks jurisdiction over five of Poulson's claims and his remaining claim lacks merit. There is no basis to encourage further proceedings at this time.

Based on the foregoing, the Court enters the following:

### RECOMMENDATIONS

1. Poulson's petition (Doc. 1) should be DENIED and DISMISSED. This Court lacks jurisdiction over Claims 1-5. Claim 6 lacks merit.

2. Poulson's supplement to his petition (Doc. 5) should also be DISMISSED for failure to exhaust state judicial remedies.

3. The Clerk of Court should be directed to enter, by separate document, a judgment of dismissal.

4. A certificate of appealability should be DENIED.

### NOTICE OF RIGHT TO OBJECT
### TO FINDINGS & RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Poulson may object to this Findings and Recommendation within 14

days.[2] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Mr. Poulson must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."</u>  Failure to do so may result in dismissal of his case without notice to him.

DATED this 29th day of March, 2016.

/s/ John Johnston
John Johnston
United States Magistrate Judge

---

[2]  As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.